

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

MARTIN LUTHER KING JR. FEDERAL BLDG. & U.S. COURTHOUSE
50 WALNUT STREET, P.O. BOX 419
NEWARK, NJ 07101-0419
**(973) 645-6340**

**WILLIAM J. MARTINI**
**JUDGE**

## LETTER OPINION

August 6, 2007

Agnes S. Wladyka, Esquire
Abromson & Carey
60 Park Place
Newark, NJ 07102
(*Attorney for Plaintiff*)

Stephen P. Conte, Special Assistant U.S. Attorney
Social Security Administration
26 Federal Plaza, Room 3904
New York, New York 10278-0004
(*Attorney for Defendant*)

    Re:    Mitchell O. Moniz v. Commissioner of Social Security
            Civil Action No. 2:06-cv-03397 (WJM) (MF)

    Plaintiff Mitchell O. Moniz brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) of the Social Security Act, seeking review of a final determination by the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").  There was no oral argument.  Fed. R. Civ. P. 78.  For the following reasons, the Commissioner's decision is **AFFIRMED**.

## Background and Procedural History

    Mitchell O. Moniz ("Moniz") is 53 years old.  (R. at 31.)  He has prior work experience as a master welder and shoe salesperson.  (R. at 23.)  Moniz applied for DIB on January 3, 2003 (R. at 71-73) and SSI on January 7, 2003 (R. at 504-11).  These applications were denied initially (R. at 33-38, 45-48) and on reconsideration (R. at 481-84, 489-94).  A hearing was held before Administrative Law Judge Katherine Edgell (the "ALJ").  (R. at 534-77.)  Moniz testified at the hearing.

On February 24, 2006, the ALJ issued an opinion denying Moniz's application for DIB and SSI. (R. at 19-30.) Applying the familiar five step analysis for determining disability claims, *see* 20 C.F.R. § 404.1520(a)(4)(i)-(v) and 20 C.F.R. § 416.920(a)(4)(i)-(v), the ALJ first determined that Moniz has not engaged in substantial gainful activity. (R. at 24.) Then, at step two, the ALJ determined that Moniz suffered from the following severe impairments: polysubstance abuse, an anxiety disorder not otherwise specified, spondylolisthess of the lumbosacral spine, and a history of a right-foot gunshot wound. (R. at 24.) Next, at step three, the ALJ found that Moniz's severe impairments did not meet or equal in severity the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 24.) Specifically, the ALJ examined listings 1.02A, 1.04A, 12.06, and 12.09. Then, at step four, the ALJ found that based on Moniz's impairments, including his substance abuse disorders, he lacks the residual functional capacity ("RFC") to perform work at any exertional level on a sustained, remunerative basis. (R. at 24-25.) Therefore, the ALJ found that Moniz was unable to perform any of his past relevant work. (R. at 25.) Finally, at step five, the ALJ found that based on Moniz's RFC, including the substance abuse disorders, no jobs existed in significant numbers in the national economy that he could perform. (R. at 26.)

The ALJ then undertook the familiar five step analysis without considering Moniz's substance abuse disorders to determine if those disorders were a "contributing factor" to his disability. *See* 20 C.F.R. §§ 404.1535, 416.935. In undertaking this analysis, the ALJ first determined that, if Moniz stopped the substance abuse, the remaining limitations would continue to be severe singularly or in combination. (R. at 26.) Next, the ALJ found that, if Moniz stopped the substance abuse, he would not have an impairment or combination of impairments that meet or medically equal any of the listing of impairments. (R. at 26-27.) At step four, the ALJ determined that, if Moniz stopped the substance abuse, he would have the RFC to perform entry-level unskilled work at the light exertional level. (R. at 27.) The ALJ, though, determined that if Moniz stopped the substance abuse, he would continue to be unable to perform his past relevant work. (R. at 29.) Finally, the ALJ determined that, if Moniz ceased his substance abuse, there would be a significant number of jobs he could perform in the national economy. (R. at 29-30.) Therefore, the ALJ concluded that Moniz would not be disabled if he stopped the substance abuse. Accordingly, the ALJ found that Moniz's substance abuse disorders were a contributing factor to the determination of disability and, as such, he was not disabled. (R. at 30.)

Moniz filed a complaint in this Court challenging the ALJ's findings. Specifically, Moniz argues that: (1) the ALJ improperly discredited his subjective complaints of pain; (2) the ALJ erred at step three in finding that his impairments, without considering the substance abuse, did not meet or equal a listed impairment; (3) the ALJ improperly evaluated the relationship between his substance abuse and his mental impairments; (4) the ALJ's minimization of the impact of his mental impairments precluded the ALJ from properly assessing his combined impairments; and (5) the ALJ failed to assess the side-effects of his medication. This matter is now before the Court.

**Standard of Review**

In reviewing the ALJ's decision, the district court exercises plenary review over her legal conclusions and is bound by her factual findings that are supported by substantial evidence, *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000), as the court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992) (citing *Early v. Heckler*, 743 F.2d 1002, 1007 (3d Cir. 1984)). Substantial evidence is a deferential standard of review, as it can be defined as consisting of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB, 305 U.S. 197*, 229 (1938).

## Discussion

### A.     Substantial Evidence Supports the ALJ's Credibility Determination

Moniz first contends that the ALJ improperly evaluated the credibility of his complaints. (Pl.'s Br. at 26.)  At the hearing, Moniz testified that he experiences back pain which radiates into his hips and lower extremeities, as well as symptoms of depression and anxiety. (R. at 28). The ALJ, though, discredited these subjective complaints.  (R. at 28.)  Specifically, she noted, among other things, Moniz's ability to engage in activities of daily living, and evidence showing that he worked with his father following the alleged disability onset date (i.e., November 21, 2001).  (R. at 28.)

It is well-established that an ALJ is required to determine the extent to which the claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it. *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999) (citing 20 C.F.R. § 404.1529(c)).  Under the current statutory regime, a claimant's statements about her pain do not alone establish disability. 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 404.1529(c).  Rather, a disability must be proven through objective medical evidence.  Furthermore, the ALJ should consider a claimant's daily activities, the location, frequency, and intensity of the pain and symptoms, the type and dosage of pain medication, and any other measures used to relieve the alleged pain.  20 C.F.R. § 404.1529(c)(3). In making such determinations, the ALJ is given great discretion, and his findings are entitled to judicial deference.  *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983).

Here, the ALJ's analysis of Moniz's credibility was supported by substantial evidence.  In her discussion of Moniz's complaints, the ALJ determined that evidence in the record contradicted his complaints of pain.  Specifically, the ALJ noted that: (1) the evidence showed that Moniz engaged in a fair amount of work activity with his father following the alleged disability onset date (R. at 28, 357, 361); (2) the record shows that he was able to help his father move (R. at 28, 316); (3) he ran errands and cared for his son while she worked (R. at 28, 320); (4) he vacationed in California (R. at 28, 323); (5) he does not require any assistive device for ambulation (R. at 28, 187); (6) he is independent in all aspects of his self-care and transportation; (7) the Social Security claims representative who interviewed Moniz face-to-face upon the filing of his disability applications failed to observe the claimant having any mental or physical

disability (R. at 28, 93); (8) Moniz's inconsistent earnings records did not signify a strong employment motivation (R. at 28, 76-77); and (9) a report by Judy Thomson, a physical therapist, commented that Moniz showed signs of "symptom magnification" (R. at 28, 245). Furthermore, the Court notes that evidence in the record shows that Moniz worked with his father in Upstate New York on numerous occasions after the alleged disability onset date. (R. at 327, 341.)

Furthermore, the ALJ noted that objective medical evidence contradicted Moniz's complaints of pain. The ALJ specifically gave weight to reports from Dr. William Head, who performed numerous psychiatric evaluations of Moniz. (R. at 27-28.) On May 31, 2002, Dr. Head concluded that Moniz's ability to concentrate was intact, his thinking was logical and coherent, there was no evidence of suicidal thoughts, and he was both calm and relaxed. (R. at 179.) Dr. Head further found that Moniz was able to return to his former employment as a construction worker. (R. at 171, 181.) Furthermore, Dr. Byran Massoud, Moniz's treating physician, cleared him for work two months after his alleged onset date. (R. at 239.)

Moreover, the ALJ found that Moniz's credibility was further put into question by numerous pieces of evidence showing that, contrary to his claims, he continues to abuse drugs and alcohol. (R. at 28.) Specifically, Dr. Head reported that Moniz continued to drink after his alleged onset date. (R. at 28, 168-171.) Furthermore, at the administrative hearing, Moniz testified under oath that he was unable to obtain medical clearance for back surgery in December 2001 as a result of high blood pressure. (R. at 572-73.) However, a report from West Bergen Mental Healthcare, states that Moniz was denied clearance due to concern over his alcoholism. (R. at 160.) In fact, while Moniz claimed that he was not using alcohol, his father contacted Dr. Bauer, the physician responsible for pre-operative clearance, stating that Moniz has not been forthright and that he had a drug and alcohol problem. (R. at 251.) Moreover, Moniz's father apparently contacted Dr. Head and informed him that Moniz's driver's license had been revoked due to drunk driving. (R. at 171, 191-92.)

Based on the foregoing, the Court concludes that the ALJ properly discredited Moniz's subjective complaints of pain . *See* 20 C.F.R. 404.1529 (requiring consideration of "all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your treating, examining or consulting physician ... and observations by our employees and other persons). Accordingly, Moniz's argument on this ground is denied.

### B. The ALJ Based Her Analysis at Step Three on Substantial Evidence

Next, Moniz argues that the ALJ erred by not finding that, if he stopped his substance abuse, his impairments would not meet or medically equal any of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (Pl.'s Br. at 27.) Specifically, Moniz argues that his impairments met or equaled listings 12.04 (affective disorders) and 12.06 (anxiety-related disorders). "For a claimant to show his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter

how severely, does not qualify." *Sullivan v. Zebley*, 293 U.S. 521, 530 (1990) (emphasis in original).

The 12.04 and 12.06 listings at issue consist of paragraph A criteria (a set of medical findings), paragraph B criteria (a set of impairment-related functional limitations) and paragraph C criteria (a set of additional functional limitations). 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(A). The required level of severity for 12.04 affective disorders is met when "the requirements in both A and B are satisfied, or when the requirements in C are satisfied." 20 C.F.R. Pt. 404, App. 1, § 12.04. The required level of severity for 12.06 anxiety-related disorders is met when "the requirements in both A and B are satisfied, or when the requirements in A and C are satisfied." 20 C.F.R. Pt. Subpt. P, App. 1, § 1206.

In her opinion, the ALJ determined that the paragraph B requirements in 12.06, which are identical to those in 12.04, were not met.[1] Under paragraph B, Moniz was required to establish two marked restrictions of the following: (1) marked restrictions of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04(B), 12.06(B). The ALJ determined that evidence existed regarding repeated episodes of decompensation. (R. at 24.) However, she found that none of the other categories were satisfied. Therefore, the ALJ determined that these listings were not met.

The Court finds this ruling to be based on substantial evidence. First, the record supports the ALJ's conclusion that there were no marked restrictions of Moniz's activities of daily living. As mentioned above, Moniz cared for his son while his wife worked, helped his father build a house, and went on vacation. Furthermore, at the administrative hearing, Moniz testified that he is able to wash and dress himself. (R. at 561.) He is also able to play with his son. (R. at 563.) The record also supports a finding that Moniz had no difficulties maintaining social functioning, or maintaining concentration, persistence or pace. For instance, Dr. Head noted that Moniz's ability to concentrate was intact. (R. at 179.) Furthermore, immediate, recent, and remote memory recall functions remained intact as well. (R. at 179.) Dr. Head noted that Moniz's thinking was logical and coherent. (R. at 179.) Moreover, Dr. Head remarked that Moniz was calm and relaxed, and his social judgment remained intact. (R. at 179.)

The paragraph C requirements were also not met. Paragraph C of 12.04 requires demonstration of a "[m]edically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities...." Moniz does not come forth with evidence of any diagnosis of an affective disorder, not caused by his substance abuse, which persisted for more than 2 years. Furthermore,

---

[1]The ALJ did not specifically address listing 12.04. However, since listings 12.04 and 12.06 contain the identical required categories listed above, the Court shall treat the ALJ's ruling regarding listing 12.06 as applicable to any 12.04 listing determination.

5

paragraph C of 12.06 requires a demonstration of a complete inability to function outside one's home. This, clearly, has not been satisfied.

In sum, the Court finds that the ALJ's findings that Moniz's impairments did not meet any listing of impairments was based upon substantial evidence. Therefore, Moniz's argument on this ground is denied.

### C. The ALJ's RFC Analysis at Step Four Was Based on Substantial Evidence.

Next, Moniz challenges the ALJ's finding that, if he stopped his substance abuse, he would retain the RFC to perform entry-level unskilled work at the light exertional level. Moniz argues that his mental impairment existed prior to his alcohol and substance abuse, that he uses these substances to "self medicate," and that, in the absence of his substance abuse, he would be disabled as a result of his underlying mental impairments.

Residual functional capacity is an administrative assessment of the most work a claimant is able to perform given the limitations imposed by her impairment. 20 C.F.R. §§ 404.1545 and 416.945; Soc. Sec. Ruling 96-8p. "In making a residual functional capacity determination, the ALJ must consider all evidence before him. Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his reasons for discounting such evidence." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000). Furthermore, a finding of disability cannot occur if the drug addiction or alcoholism is a "contributing factor material to" the determination of disability. 42 U.S.C. §§ 423(d)(2)(C) and 1382(a)(3)(I).

At step four, the ALJ determined that, even if Moniz stopped his substance abuse, he would continue to suffer from an anxiety disorder, not otherwise specified. (R. at 27.) The ALJ found, though, that this condition would not result in any limitations in Moniz's ability to conduct his activities of daily living. (R. at 27.) In addition, the ALJ found that this condition only resulted in a mild restriction relative to sustaining social functioning, and at most a moderate limitation in maintaining concentration, persistence, and pace. (R. at 27.) Furthermore, the ALJ noted that no episodes of decompensation that are separate from substance abuse are reflected in the medical evidence, and that the medical evidence does not substantiate any of the Part C criteria under listing 12.06 (i.e., a complete inability to function outside of the home). (R. at 27.) In making this finding, the ALJ also considered all symptoms in accordance with 20 C.F.R. §§ 404.1529 and 416.929, along with Social Security Rulings 96-4p and 96-7p. (R. at 27.) Additionally, the ALJ considered opinion evidence in accordance with the requirements of 20 C.F.R. §§ 404.1527 and 416.927, along with Social Security Rulings 96-5p and 96-6p. (R. at 27.) Moreover, as noted above, the ALJ also found Moniz's complaints of limitations were not entirely credible. (R. at 28.) Based on the foregoing, the ALJ determined that Moniz's mental impairments did not preclude him from performing light work.

This finding was based upon substantial evidence. The evidence clearly supports the ALJ's determination that, although Moniz suffered a mental impairment, it was not significant enough, either singly or in combination with other impairments, to prevent him from performing light work. First, although Moniz alleges disability since November 21, 2001 (R. at 83), he first identified a psychiatric impairment and alleged this as a basis for disability in June 2003 (R. at 100). This fact contradicts his claim that he used drugs and alcohol to "self medicate," since the record also shows that he has been engaging in such substance abuse from as early as 1985. (R. at 146, 150, 155, 160, 252, 265, 265, 369.) Second, the ALJ correctly pointed out that in every mental status evaluation in the record, plaintiff is documented as being alert, fully oriented, coherent and goal-directed, without any signs of hallucinations, delusions, or paranoia. (R. at 27.) For instance, when Dr. Head examined Moniz on May 31, 2002, his ability to concentrate was intact. (R. at 179.) Dr. Head also noted that immediate, recent, and remote memory recall functions remained intact, thinking was logical and coherent, there was no evidence of psychomotor retardation or excitement, suicidal ideation, mania or pressured speech. (R. at 179.) As noted earlier, Dr. Head also remarked that Moniz was calm and relaxed, his social judgment remained intact, and he exhibited insight into his own personality. (R. at 179.) Most importantly, Dr. Head opined that Moniz was able of returning to his former occupation as a construction worker. (R. at 171, 181.)

Furthermore, the record shows that, when not engaging in substance abuse, Moniz undertook various work activities. For instance, a July 7, 2003 progress note indicates that he denied current drug or alcohol use, was "working with his father during the day," and "reports no problems currently." (R. at 361.) Furthermore, a July 10, 2003 progress note stated that Moniz was "unable to attend group due to work schedule." (R. at 361.) Moreover, after skipping various therapy sessions claiming that he was "too tired to come to [the] program," he "reluctantly admitted" to his therapist that he was working. (R. at 372.) Another progress note dated December 18, 2004, indicates that Moniz's mood was improved and he reported that "someone *at work* complimented him for his knowledge." (R. at 314.) (emphasis added) Thus, when sober, Moniz can apparently work.

These findings are consistent with someone able to perform the mental demands of unskilled work when not under the influence of drugs or alcohol. Accordingly, the Court finds the ALJ based his at RFC determination on substantial evidence. Moniz's argument on this ground is denied.

### D. Substantial Evidence Supports the Commissioner's Consideration of the Plaintiff's Combined Impairments

Moniz next contends that, by incorrectly minimizing the impact of his mental impairments, the ALJ failed to consider the combined effect of his impairments, both mental and physical, in assessing his RFC. (Pl.'s Mem. at 35.) The Court disagrees. First, the ALJ clearly considered the combined effects of Moniz's mental and physical impairments at step four. (R. at 27-29.) Second, as discussed in the previous section, the ALJ's determination as to the impact of

Moniz's mental impairments was based upon substantial evidence. Therefore, Moniz's argument that the ALJ failed to consider the combined effect of his impairments, because she inappropriately minimized his mental impairments, is not supported by the record. Accordingly, this argument is denied.

### E.     The ALJ Properly Assessed the Side-Effects of Moniz's Medication.

Finally, Moniz argues that the ALJ failed to discuss the side effects caused by his medications and their impact on his ability to engage in substantial gainful activity. An ALJ must explicitly address any side effects that a plaintiff claims to suffer due to medication. *Stewart v. Sec. of Health, Educ. and Welfare of the United States*, 714 F.2d 287, 290 (3d Cir. 1983). However, Moniz also fails to direct the Court to any evidence in the record showing that he suffered from side-effects caused by medication. Furthermore, the record does not substantiate Moniz's claim that he experienced any debilitating side effects from his medication. For instance, in a disability audit report from January 2003, Moniz did not note any side effects caused by his medication. (R. at 88.) Although he did, at one point, mention that side effects of a certain pain pill were depression, anxiety, and panic attacks, he then stated on the next page that the mere fact that he was in pain and no longer able to perform his job caused the very same side effects. (R. at 108, 109.) Moreover, Moniz made no mention of any side-effect at the hearing. (R. at 543-577). Therefore, Moniz's argument on this ground is denied.

### Conclusion

For the foregoing reasons, this Court finds that the decision of the ALJ is affirmed, as the ALJ's analysis was supported by substantial evidence.

s/William J. Martini

_____
**William J. Martini, U.S.D.J.**